Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES *v.* CLOER

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 12–236. Argued March 19, 2013—Decided May 20, 2013

The National Childhood Vaccine Injury Act of 1986 (NCVIA or Act) established a no-fault compensation system to stabilize the vaccine market and expedite compensation to injured parties. *Bruesewitz* v. *Wyeth LLC*, 562 U. S. ___, ___–___. Under the Act, "[a] proceeding for compensation" is "initiated" by "service upon the Secretary" of Health and Human Services and "the filing of a petition containing" specified documentation with the clerk of the Court of Federal Claims, who then "immediately" forwards the petition for assignment to a special master. 42 U. S. C. §300aa–11(a)(1). An attorney may not charge a fee for "services in connection with [such] a petition," §300aa–15(e)(3), but a court may award attorney's fees and costs "incurred [by a claimant] in any proceeding on" an unsuccessful "petition filed under section 300aa–11," if that petition "was brought in good faith and there was a reasonable basis for the claim for which the petition was brought," §300aa–15(e)(1).

In 1997, shortly after receiving her third Hepatitis-B vaccine, respondent Cloer began to experience symptoms that eventually led to a multiple sclerosis (MS) diagnosis in 2003. In 2004, she learned of a link between MS and the Hepatitis-B vaccine, and in 2005, she filed a claim for compensation under the NCVIA, alleging that the vaccine caused or exacerbated her MS. After reviewing the petition and its supporting documentation, the Chief Special Master concluded that Cloer's claim was untimely because the Act's 36-month limitations period began to run when she had her first MS symptoms in 1997. The Federal Circuit ultimately agreed that Cloer's petition was untimely. Cloer then sought attorney's fees and costs (collectively, fees). The en banc Federal Circuit found that she was entitled to recover

fees on her untimely petition.

*Held*: An untimely NCVIA petition may qualify for an award of attorney's fees if it is filed in good faith and there is a reasonable basis for its claim. Pp. 6–13.

(a) As in any statutory construction case, this Court proceeds from the understanding that "[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP America Production Co.* v. *Burton*, 549 U. S. 84, 91. Nothing in either the NCVIA's attorney's fees provision, which ties eligibility to "any proceeding on such petition" and refers specifically to "a petition filed under section 300aa–11," or the referenced §300aa–11 suggests that the reason for the subsequent dismissal of a petition, such as its untimeliness, nullifies the initial filing. As the term "filed" is commonly understood, an application is filed "when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz* v. *Bennett*, 531 U. S. 4, 8. Applying this ordinary meaning to the text at issue, it is clear that an NCVIA petition delivered to the court clerk, forwarded for processing, and adjudicated in a proceeding before a special master is a "petition filed under section 300aa–11." So long as it was brought in good faith and with a reasonable basis, it is eligible for an award of attorney's fees, even if it is ultimately unsuccessful. Had Congress intended otherwise, it could have easily limited fee awards to timely petitions.

The Government's argument that the 36-month limitations period is a statutory prerequisite for filing lacks textual support. First, there is no cross-reference to the Act's limitations provision in its fees provision, §300aa–15(e), or the referenced §300aa–11(a)(1). Second, reading the provision to provide that "no petition may be *filed* for compensation" late, as the Government asks, would require the Court to conclude that a petition like Cloer's, which was "filed" under that term's ordinary meaning but was later found to be untimely, was never filed at all. This Court's "inquiry ceases [where, as here,] 'the statutory language is unambiguous and "the statutory scheme is coherent and consistent."'" *Barnhart* v. *Sigmon Coal Co.*, 534 U. S. 438, 450.

The Government's contrary position is also inconsistent with the fees provision's purpose, which was to avoid "limit[ing] petitioners' ability to obtain qualified assistance" by making awards available for "non-prevailing, good-faith claims." H. R. Rep. No. 99–908, pt. 1, p. 22. Pp. 6–10.

(b) The Government's two additional lines of argument for barring the award of attorney's fees for untimely petitions are unpersuasive. First, the canon of construction favoring strict construction of waivers of sovereign immunity, the presumption favoring the retention of fa-

miliar common-law principles, and the policy argument that the NCVIA should be construed so as to minimize complex and costly fees litigation must all give way when, as here, the statute's words "are unambiguous." *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253–254. Second, even if the NCVIA's plain text requires that special masters occasionally carry out "shadow trials" to determine whether late petitions were brought in good faith and with a reasonable basis, that is not such an absurd burden as to require departure from the words of the Act. This is especially true where Congress has specifically provided for such "shadow trials" by permitting the award of attorney's fees "in *any* proceeding [on an unsuccessful] petition" if such petition was brought in good faith and with a reasonable basis. §300aa–15(e)(1). Pp. 10–13.

675 F. 3d 1358, affirmed.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, BREYER, ALITO, and KAGAN, JJ., joined, and in which SCALIA and THOMAS, JJ., joined as to all but Part II–B.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–236

KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES, PETITIONER *v.* MELISSA CLOER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[May 20, 2013]

JUSTICE SOTOMAYOR delivered the opinion of the Court.*

The National Childhood Vaccine Injury Act of 1986 (NCVIA or Act), 100 Stat. 3756, 42 U. S. C. §300aa–1 *et seq.*, provides that a court may award attorney's fees and costs "incurred [by a claimant] in any proceeding on" an unsuccessful vaccine-injury "petition filed under section 300aa–11," if that petition "was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." §300aa–15(e)(1). The Act's limitations provision states that "no petition may be filed for compensation" more than 36 months after the claimant's initial symptoms occur. §300aa–16(a)(2). The question before us is whether an untimely petition can garner an award of attorney's fees. We agree with a majority of the en banc Court of Appeals for the Federal Circuit that it can.

---

*JUSTICE SCALIA and JUSTICE THOMAS join all but Part II–B of this opinion.

I

A

The NCVIA "establishes a no-fault compensation program 'designed to work faster and with greater ease than the civil tort system.'" *Bruesewitz* v. *Wyeth LLC*, 562 U. S. ___, ___ (2011) (slip op., at 3) (quoting *Shalala* v. *Whitecotton*, 514 U. S. 268, 269 (1995)). Congress enacted the NCVIA to stabilize the vaccine market and expedite compensation to injured parties after complaints mounted regarding the inefficiencies and costs borne by both injured consumers and vaccine manufacturers under the previous civil tort compensation regime. 562 U. S., at ___–___ (slip op., at 2–3); H. R. Rep. No. 99–908, pt. 1, pp. 6–7 (1986) (hereinafter H. R. Rep.).

The compensation program's procedures are straightforward. First, "[a] proceeding for compensation under the Program for a vaccine-related injury or death shall be initiated by service upon the Secretary [for the Department of Health and Human Services] and the filing of a petition containing the matter prescribed by subsection (c) of this section with the United States Court of Federal Claims." 42 U. S. C. §300aa–11(a)(1). Subsection (c) provides in relevant part that a petition must include "an affidavit, and supporting documentation, demonstrating that the person who suffered such injury" was actually vaccinated and suffered an injury. §300aa–11(c)(1). Next, upon receipt of an NCVIA petition, "[t]he clerk of the United States Court of Federal Claims shall immediately forward the filed petition to the chief special master for assignment to a special master." §300aa–11(a)(1). This special master then "makes an informal adjudication of the petition." *Bruesewitz*, 562 U. S., at ___ (slip op., at 3) (citing §300aa–12(d)(3)). A successful claimant may recover medical costs, lost earning capacity, and an award for pain and suffering, 42 U. S. C. §300aa–15(a), with compensation paid out from a federal trust fund supported

by an excise tax levied on each dose of certain covered vaccines, see 26 U. S. C. §§4131, 4132, 9510; 42 U. S. C. §300aa–15(f)(4)(A). But under the Act's limitations provision, "no petition may be filed for compensation under the Program for [a vaccine-related] injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of" the alleged injury. §300aa–16(a)(2).

The Act also includes an unusual scheme for compensating attorneys who work on NCVIA petitions. See §300aa–15(e).[1] "No attorney may charge any fee for services in connection with a petition filed under section 300aa–11 of this title." §300aa–15(e)(3).[2] But a court may award attorney's fees in certain circumstances. In the case of successful petitions, the award of attorney's fees is automatic. §300aa–15(e)(1) ("In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover . . . reasonable attorneys' fees, and . . . other costs"). For unsuccessful petitions, "the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys'

---

[1] The relevant paragraph provides:

"(1) In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—

"(A) reasonable attorneys' fees, and

"(B) other costs,

"incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." §300aa–15(e).

[2] For simplicity, we refer to attorney's fees and costs as simply attorney's fees.

fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." *Ibid.* In other words, "[a]ttorney's fees are provided, not only for successful cases, but even for unsuccessful claims that are not frivolous." *Bruesewitz*, 562 U. S., at ___ (slip op., at 4).

B

Respondent, Dr. Melissa Cloer, received three Hepatitis-B immunizations from September 1996 to April 1997. Shortly after receiving the third vaccine, Dr. Cloer began to experience numbness and strange sensations in her left forearm and hand. She sought treatment in 1998 and 1999, but the diagnoses she received were inconclusive. By then, Dr. Cloer was experiencing numbness in her face, arms, and legs, and she had difficulty walking. She intermittently suffered these symptoms until 2003, when she began to experience the full manifestations of, and was eventually diagnosed with, multiple sclerosis (MS). In 2004, Dr. Cloer became aware of a link between MS and the Hepatitis-B vaccine, and in September 2005, she filed a claim for compensation under the NCVIA, alleging that the vaccinations she received had caused or exacerbated her MS.

Dr. Cloer's petition was sent by the clerk of the Court of Federal Claims to the Chief Special Master, who went on to adjudicate it. After reviewing the petition and its supporting documentation, the Chief Special Master concluded that Dr. Cloer's claim was untimely because the Act's 36-month limitations period began to run when she first experienced the symptoms of MS in 1997. *Cloer* v. *Secretary of Dept. of Health and Human Servs.*, No. 05–1002V, 2008 WL 2275574, *1, *10 (Fed. Cl., May 15, 2008) (opinion of Golkiewicz, Chief Special Master) (citing §300aa–

16(a)(2) (NCVIA's limitations provision)). Relying on Federal Circuit precedent, the Chief Special Master also rejected Dr. Cloer's argument that the NCVIA's limitations period should be subject to equitable tolling. *Id.,* at *9 (citing *Brice* v. *Secretary of Health and Human Servs.*, 240 F. 3d 1367, 1373 (2001)). A divided panel of the Federal Circuit reversed the Chief Special Master, concluding that the NCVIA's limitations period did not commence until "the medical community at large objectively recognize[d] a link between the vaccine and the injury." *Cloer* v. *Secretary of Health and Human Servs.*, 603 F. 3d 1341, 1346 (2010).

The en banc court then reversed the panel's decision, *Cloer* v. *Secretary of Health and Human Servs.*, 654 F. 3d 1322 (2011), cert. denied, 566 U. S. ___ (2012), and held that the statute's limitations period begins to run on "the calendar date of the occurrence of the first medically recognized symptom or manifestation of onset of the injury claimed by the petitioner." 654 F. 3d, at 1324–1325. The Court of Appeals also held that the Act's limitations provision was nonjurisdictional and subject to equitable tolling in limited circumstances, overruling its prior holding in *Brice*. 654 F. 3d, at 1341–1344. The court concluded, however, that Dr. Cloer was ineligible for tolling and that her petition was untimely. *Id.,* at 1344–1345.

Following this decision, Dr. Cloer moved for an award of attorney's fees. The en banc Federal Circuit agreed with her that a person who files an untimely NCVIA petition "assert[ing] a reasonable limitations argument" may recover fees and costs so long as "'the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.'" 675 F. 3d 1358, 1359–1361 (2012) (quoting §300aa–15(e)(1)). Six judges disagreed with this conclusion and instead read the NCVIA to bar such awards for untimely petitions. *Id.,* at 1364–1368 (Bryson, J., dissenting). We granted the Gov-

ernment's petition for writ of certiorari. 568 U. S. ___ (2012). We now affirm.

## II

### A

As in any statutory construction case, "[w]e start, of course, with the statutory text," and proceed from the understanding that "[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP America Production Co.* v. *Burton*, 549 U. S. 84, 91 (2006). The Act's fees provision ties eligibility for attorney's fees broadly to "any proceeding on such petition," referring specifically to "a petition filed under section 300aa–11." 42 U. S. C. §§300aa–15(e)(1), (3). Section 300aa–11 provides that "[a] proceeding for compensation" is "initiated" by "service upon the Secretary" and "the filing of a petition containing" certain documentation with the clerk of the Court of Federal Claims who then "immediately forward[s] the filed petition" for assignment to a special master. §300aa–11(a)(1). See *supra,* at 2.

Nothing in these two provisions suggests that the reason for the subsequent dismissal of a petition, such as its untimeliness, nullifies the initial filing of that petition. We have explained that "[a]n application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz* v. *Bennett*, 531 U. S. 4, 8 (2000). When this ordinary meaning is applied to the text of the statute, it is clear that an NCVIA petition which is delivered to the clerk of the court, forwarded for processing, and adjudicated in a proceeding before a special master is a "petition filed under section 300aa–11." 42 U. S. C. §300aa–15(e)(1). And so long as such a petition was brought in good faith and with a reasonable basis, it is eligible for an award of attorney's fees, even if it is

ultimately unsuccessful. *Ibid.* If Congress had intended to limit fee awards to timely petitions, it could easily have done so. But the NCVIA instead authorizes courts to award attorney's fees for those unsuccessful petitions "brought in good faith and [for which] there was a reasonable basis." *Ibid.*[3]

The Government argues that the Act's limitations provision, which states that "no petition may be filed for compensation" 36 months after a claimant's initial symptoms began, §300aa–16(a)(2), constitutes "a statutory prerequisite to the filing of a petition 'for compensation under the Program,'" Brief for Petitioner 16. Thus, the Government contends, a petition that fails to comply with these time limits is not "a petition filed under section 300aa–11" and is therefore ineligible for fees under §300aa–15(e)(1). See 675 F. 3d, at 1364–1366 (Bryson, J., dissenting).

The Government's argument lacks textual support. First, as noted, there is no cross-reference to the Act's limitations provision in its fees provision, §300aa–15(e), or the other section it references, §300aa–11(a)(1). When these two linked sections are read in tandem they simply indicate that petitions filed with the clerk of the court are eligible for attorney's fees so long as they comply with the other requirements of the Act's fees provision. By its terms, the NCVIA requires nothing more for the award of attorney's fees. A petition filed in violation of the limitations period will not result in the payment of compensation, of course, but it is still a petition filed under §300aa–11(a)(1).[4]

---

[3] The en banc dissent reasoned that a dismissal for untimeliness does not constitute a judgment on the merits of a petition. See 675 F. 3d 1358, 1365 (CA Fed. 2012) (opinion of Bryson, J.). That argument is not pressed here by the Government, which acknowledged at oral argument that dismissals for untimeliness result in judgment against the petitioner. Tr. of Oral Arg. 12–13.

[4] The Government suggests that giving the words of their statute

When the Act does require compliance with the limitations period, it provides so expressly. For example, §300aa–11(a)(2)(A) prevents claimants from bringing suit against vaccine manufacturers "unless a petition has been filed, *in accordance with section 300aa–16 of this title* [the limitations provision], for compensation under the Program for such injury or death." (Emphasis added.) We have long held that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates* v. *United States*, 522 U. S. 23, 29–30 (1997) (internal quotation marks omitted). The absence of any cross-reference to the limitations provision in either the fees provision, §300aa–15(e)(1), or the instructions for initiating a compensation proceeding, §300aa–11(a)(1), indicates that a petition can be "filed" without being "in accordance with [the limitations provision]." Tellingly, nothing in §300aa–11(a)(1) requires a petitioner to allege or demonstrate the timeliness of his or

---

their plain meaning would produce incongruous results; notably, it might indicate that "a failure to comply with the limitations provision would not even bar recovery under the Compensation Program itself because 42 U. S. C. 300aa-13 ('Determination of eligibility and compensation') does not expressly cross-reference the limitations provision." Brief for Petitioner 18. The Government's argument assumes that both sections are equivalently affected by absence of a cross-reference. This is incorrect. The Government is right that because "the law typically treats a limitations defense as an affirmative defense," *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 133 (2008), a failure to apply the limitations provision to the section outlining the conditions under which compensation should be awarded would be "contrary to [the Act's] plain meaning and would produce an absurd result," *Milavetz, Gallop & Milavetz, P. A.* v. *United States*, 559 U. S. 229, 252 (2010). In contrast, giving the Act's fees provision its plain meaning would produce no such absurd result. It would simply allow petitioners to recover attorney's fees for untimely petitions.

her petition to initiate such a proceeding.[5]

Second, to adopt the Government's position, we would have to conclude that a petition like Dr. Cloer's, which was "filed" under the ordinary meaning of that term but was later found to be untimely, was never filed at all because, on the Government's reading, "no petition may be *filed* for compensation" late. §300aa–16(a)(2) (emphasis added). Yet the court below identified numerous instances throughout the NCVIA where the word "filed" is given its ordinary meaning, 675 F. 3d, at 1361, and the Government does not challenge this aspect of its decision. Indeed, the Government's reading would produce anomalous results with respect to these other NCVIA provisions. Consider §300aa–12(b)(2), which provides that "[w]ithin 30 days after the Secretary receives service of any petition filed under section 300aa–11 of this title the Secretary shall publish notice of such petition in the Federal Register." If the NCVIA's limitations provision worked to void the filing of an untimely petition, then one would expect the Secretary to make timeliness determinations prior to publishing such notice or to strike any petitions found to be untimely from the Federal Register. But there is no indication that the Secretary does either of these things.[6]

The Government asks us to adopt a different definition of the term "filed" for a single subsection so that for fees

---

[5] If the NCVIA's limitations period were jurisdictional, then we might reach a different conclusion because the Chief Special Master would have lacked authority to act on Dr. Cloer's untimely petition in the first place. But the Government chose not to seek certiorari from the Federal Circuit's en banc decision holding that the period is nonjurisdictional, see *Cloer* v. *Secretary of Health and Human Servs.*, 654 F. 3d 1332, 1341–1344 (2011), and the Government now acknowledges that the NCVIA contains no "clear statement" that §300aa–16's filing deadlines carry jurisdictional consequences. See Reply Brief 7 (discussing *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. ___ (2013)).

[6] Dr. Cloer's petition was published, and remains, in the Federal Register. See 70 Fed. Reg. 73011, 73014 (2005).

purposes, and only for fees purposes, a petition filed out of time must be treated retroactively as though it was never filed in the first place. Nothing in the text or structure of the statute requires the unusual result the Government asks us to accept. In the NCVIA, the word "filed" carries its common meaning. See *Artuz*, 531 U. S., at 8. That "no petition may be filed for compensation" after the limitations period has run does not mean that a late petition was never filed at all.

Our "inquiry ceases [in a statutory construction case] if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Barnhart* v. *Sigmon Coal Co.*, 534 U. S. 438, 450 (2002) (internal quotation marks omitted). The text of the statute is clear: like any other unsuccessful petition, an untimely petition brought in good faith and with a reasonable basis that is filed with—meaning delivered to and received by—the clerk of the Court of Federal Claims is eligible for an award of attorney's fees.

B

The Government's position is also inconsistent with the goals of the fees provision itself. A stated purpose of the Act's fees scheme was to avoid "limit[ing] petitioners' ability to obtain qualified assistance" by making fees awards available for "non-prevailing, good-faith claims." H. R. Rep., at 22. The Government does not explain why Congress would have intended to discourage counsel from representing petitioners who, because of the difficulty of distinguishing between the initial symptoms of a vaccine-related injury and an unrelated malady, see, *e.g., Smith* v. *Secretary of Dept. of Health and Human Servs.*, No. 02–93V, 2006 WL 5610517, *6–*7 (Fed. Cl., July 21, 2006) (opinion of Golkiewicz, Chief Special Master), may have good-faith claims with a reasonable basis that will only later be found untimely.

III

The Government offers two additional lines of argument for barring the award of attorney's fees for untimely petitions. It first invokes two canons of construction: the canon favoring strict construction of waivers of sovereign immunity and the "'presumption favoring the retention of long-established and familiar [common-law] principles.'" Brief for Petitioner 32 (quoting *United States* v. *Texas*, 507 U. S. 529, 534 (1993)). Similarly, the Government also argues that the NCVIA should be construed so as to minimize complex and costly fees litigation. But as the Government acknowledges, such canons and policy arguments come into play only "[t]o the extent that the Vaccine Act is ambiguous." Brief for Petitioner 28. These "rules of thumb" give way when "the words of a statute are unambiguous," as they are here. *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253–254 (1992).

Second, the Government argues that permitting the recovery of attorney's fees for untimely petitions will force special masters to carry out costly and wasteful "shadow trials," with no benefit to claimants, in order to determine whether these late petitions were brought in good faith and with a reasonable basis. We reiterate that "when [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U. S. 1, 6 (2000) (internal quotation marks omitted). Consequently, even if the plain text of the NCVIA requires that special masters occasionally carry out such "shadow trials," that is not such an absurd burden as to require departure from the words of the Act. This is particularly true here because Congress has specifically provided for such "shadow trials" by permitting the award of attorney's fees "in *any* proceeding [on an unsuccessful] petition" if such petition was brought in good faith

and with a reasonable basis, 42 U. S. C. §300aa–15(e)(1) (emphasis added), irrespective of the reasons for the petition's failure, see, *e.g., Caves* v. *Secretary of Health and Human Servs.*, No. 07–443V, 2012 WL 6951286, *2, *13 (Fed. Cl., Dec. 20, 2012) (opinion of Moran, Special Master) (awarding attorney's fees despite petitioner's failure to prove causation).

In any event, the Government's fears appear to us exaggerated. Special masters consistently make fee determinations on the basis of the extensive documentation required by §300aa–11(c) and included with the petition.[7] Indeed, when adjudicating the timeliness of a petition, the special master may often have to develop a good sense of the merits of a case, and will therefore be able to determine if a reasonable basis exists for the petitioner's claim, including whether there is a good-faith reason for the untimely filing. In this case, for example, the Chief Special Master conducted a "review of the record as a whole," including the medical evidence that would have supported the merits of Dr. Cloer's claim, before determining that her petition was untimely. *Cloer*, 2008 WL 2275574, *1–*2, *10.

The Government also argues that permitting attorney's fees on untimely petitions will lead to the filing of more untimely petitions. But the Government offers no evidence to support its speculation. Additionally, this argument is premised on the assumption that in the pursuit of fees, attorneys will choose to bring claims lacking good faith or a reasonable basis in derogation of their ethical duties. There is no basis for such an assumption. Finally, the special masters have shown themselves more than

---

[7] See, *e.g., Wells* v. *Secretary of Dept. of Health and Human Servs.*, 28 Fed. Cl. 647, 649–651 (1993); *Rydzewski* v. *Secretary of Dept. of Health and Human Servs.*, No. 99–571V, 2008 WL 382930, *2–*6 (Fed. Cl., Jan. 29, 2008) (opinion of Moran, Special Master); *Hamrick* v. *Secretary of Health and Human Servs.*, No. 99–683V, 2007 WL 4793152, *2–*3, *5–*9 (Fed. Cl., Nov. 19, 2007) (opinion of Moran, Special Master).

capable of discerning untimely claims supported by good faith and a reasonable basis from those that are specious. *Supra*, at 12.

* * *

We hold that an NCVIA petition found to be untimely may qualify for an award of attorney's fees if it is filed in good faith and there is a reasonable basis for its claim.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*